IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BOB WILLIAM MCCLARY, JR.,

     Plaintiff,

v.                                                    Case No. 3:20-cv-00425

APRIL FRANKLIN, et al.,

     Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

In June 2020, Plaintiff Bob William McClary, Jr., ("McClary"), proceeding *pro se*, initiated this lawsuit and, in August 2020, filed an amended complaint followed by a second amended complaint in October 2020, all made pursuant to 42 U.S.C. § 1983. (ECF Nos. 2, 22, 36). Pending before the court is the Motion for Summary Judgment of Defendants Blevins, Franklin, and Stokely. (ECF No. 130). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly considered the record and the issues in dispute, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the following findings and **RECOMMENDS** that Defendants' motion for summary judgment, (ECF No. 130), be **GRANTED**; the amended complaints, (ECF No. 22, 36), be **DISMISSED;** and this case be **REMOVED** from the docket of the Court. The

1

undersigned notes that Defendant Cook has not been served with process in this case and, therefore, further **RECOMMENDS** that the amended complaints be **DISMISSED** against Defendant Cook pursuant to Fed. R. Civ. P. 4(m).

## I.     Relevant Facts and Procedural History

McClary initiated this action on June 22, 2020 and filed his first amended complaint on August 21, 2020. (ECF Nos. 2, 22). In his first amended complaint, McClary asserts that while he was incarcerated at the Western Regional Jail and Correctional Facility ("WRJ") in January 2020, he was "physically assaulted by multiple inmates after he repeatedly notified the defendants that he was receiving threats from said inmates and specifically stated to the defendants that he 'feared for his own life.'" (ECF No. 22 at 2). McClary claims that a group of inmates—including one inmate with a shank—approached him, and after telling McClary that a deputy informed them of his pending charge involving a sex crime, the inmates attacked. (*Id.* at 5).

According to McClary, the defendants were "negligent" in placing him in "a cell block with convicted felons that were known to be violent" toward people charged with sex crimes. (*Id.* at 2). He recounted remarks from three individuals at the WRJ: Jane Doe #1, who provided that individuals incarcerated for sex crimes had been assaulted "multiple times" at the jail; Jane Doe #2, later identified as Defendant Franklin, who told him that "[t]he officer should have known better than to house you in that unit with those guys" because similar incidents had taken place; and Jane Doe #3, who opined that McClary should have been moved when he informed officers about the taunting and threats. (*Id.* at 2–3). He further contends that Jane Doe #4, a jail official, informed him that those in charge of classification know that people charged with crimes like McClary's "<u>always</u> have problems in that unit." (*Id.* at 3) (emphasis in original).

McClary indicates that he repeatedly told officers John Does #1–#4 that he feared for his life and informed them of the threats against him using the intercom system, but they failed to protect him. (*Id.*). McClary alleges that Defendant Blevins assured him he would be safe despite his placement with felons known to be violent toward people charged with sex crimes. (*Id.* at 4). He claims that he told deputies about the threats and harassment on three occasions and gave a handwritten note to an official, later identified as Defendant Stokely, about the harassment he was receiving in the pod. (*Id.*). He asserts that he requested that the jail preserve the video evidence of the attack and the preceding threats. (*Id.* at 5). For relief, McClary requests monetary damages for physical and emotional harm he suffered, as well as "declaratory relief" and punitive damages. (*Id.* at 6).

On October 27, 2020, McClary filed his second amended complaint. (ECF No. 36). Therein, McClary incorporates his previous amended complaint and clarifies some matters, including the corrected name of Defendant Blevins and the date of the assault, January 17, 2020. (*Id.* at 1). McClary maintains his claims against Defendants Blevins and Stokely as previously stated and adds that he informed Defendant Franklin about the harassment he received from inmate Jonathan Rakes, and she confirmed that she was aware of the harassment. In addition, she admitted that she should not have placed McClary in that pod. (*Id.* at 2). He asserts that "LPN Cook" failed to take preventative measures to keep him safe after he told her of the threats against him when she took his blood pressure. (*Id.*). McClary also clarifies the parties he intends to sue, eliminating the Doe defendants and providing names for Defendants Franklin, Stokely, Blevins, and Cook. (*Id.* at 1). Defendant Cook, however, has not been successfully served in this matter. (ECF No. 63). McClary was notified that the United States Marshals Service was unable

to serve process on Defendant Cook, because she no longer works at the WRJ, and her address is unknown. (ECF No. 85 at 3). McClary was instructed that he would need to provide an address for Defendant Cook to the Clerk of Court in order for a new summons to be issued and the defendant to be served. (*Id.*). McClary did not provide an address.

On October 29, 2021, Defendants Franklin, Stokely, and Blevins ("Defendants") filed a motion for summary judgment with a contemporaneous memorandum of law. (ECF Nos. 130, 131). They argue that McClary's claims must be dismissed because jail officials did not know that McClary was in impending danger. (ECF No. 131 at 5). Defendants posit that McClary's conversations with staff and alleged delivery of a note to Defendant Stokely do not show that staff were subjectively aware of the dangers he faced. (*Id.* at 3–4). They claim that McClary's "allegations as to Defendant Stokely are conjecture and he pulled Stokely's name off of a report." (*Id.* at 4). They contend that McClary's assertions are insufficient to show that the defendants acted with deliberate indifference by failing to protect him. (*Id.* at 4–6).

Defendants and McClary filed a copy of McClary's deposition transcript in support of their arguments. (ECF Nos. 134, 135). McClary testified that he was uncertain of the identity of his attackers because he was only at the jail for two days, but found the name Jonathan Rakes on the incident report after filing his complaint. (ECF No. 135 at 14). He later learned that the primary instigator of the assault was an inmate named Brandon Webb, not Jonathan Rakes. McClary agreed that he did not file a written request to be placed in protective custody during booking, but insisted he gave Defendant Stokely a piece of paper requesting protection and told Defendant Blevins that he needed to be housed in a safe place due to his charge. (*Id.* at 17–20). He agreed, however, that his conversation with Defendant Blevins reflected a general, rather than specific, concern for

his safety as he had not yet been threatened by other inmates. (*Id.* at 21).

McClary testified that the taunts and harassment began the morning he was placed in his assigned pod. He was surprised that he was only in the pod 22 hours before the attack occurred. (ECF No. 135 at 16). McClary testified that he obtained a pencil and paper from another inmate and wrote a note stating that he was being threatened, he feared for his life, and he needed to be moved to another pod. He gave this note to Defendant Stokely during meal distribution, although he could not recall the exact time he handed the note to Defendant Stokely. (*Id.* at 22–23, 37). McClary also recalled buzzing the "tower officer" once, at around noon, reporting that he was being "harassed" and asking if the officer could help him, to no avail. (*Id.* at 38—39). Ultimately, at least five inmates attacked McClary, beating and kicking him. (*Id.* at 34). After the assault was over, McClary was taken to another pod for his protection. As to his conversation with Defendant Franklin, McClary conceded that the conversation took place after he was assaulted, but testified that Franklin admitted to watching the other inmates on her monitor as they "tormented" McClary throughout the day. She also stated that jail officials "knew better" than to place McClary in that pod. (*Id.* at 23–24).

In addition to the deposition transcript, Defendants provided a copy of McClary's booking information, showing that he arrived in C pod at 2:40 a.m. on January 17, 2020 and was transferred from C pod to A pod at 2:11 a.m. the following morning. (ECF No. 130-1). Defendants also supplied the incident report regarding the assault, which states that McClary was involved in an inmate fight with Brandon Webb in C pod at approximately 11:00 p.m. on January 17, 2020. (ECF No. 130-2). The pod was then secured by three correctional officers, and McClary was escorted to the medical department where he was cleared. (*Id.*). A video surveillance recording showed Inmate

Webb punching McClary in the face on the top tier of the C pod in cell 15. Webb was rehoused and placed on 72-hour detention. (*Id.*).

## II.  <u>Standard of Review</u>

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 130). Under Rule 56, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 501 U.S. at 248. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The court shall "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden on the moving party; it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson, Inc.,* 477 U.S. at 247-48. While any permissible inferences to be drawn from the underlying facts

6

"must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50). Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

McClary did not submit a response to Defendants' motion, and thus did not make any arguments to controvert their assertions. However, "a nonmovant's failure to respond to a summary judgment motion...does not, of course, automatically result in judgment for the movant" and "[t]he ultimate burden of persuasion remains with [the movant] to show that it is entitled to judgment as a matter of law." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (internal citations omitted); *see also Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). McClary has not evinced a failure to prosecute his action and has made additional filings since Defendants filed their motion. (ECF Nos. 136, 137). Thus, McClary's lack of response to this motion does not represent acquiescence to Defendants' position that no genuine material fact is in dispute and dismissal is warranted. *See Mack v. South Carolina*, No. C/A 4:09-275-TLW-TER, 2009 WL 1872971, at *1 (D.S.C. June 25, 2009) (rejecting magistrate judge's finding that summary judgment was appropriate solely on the basis that the motion was unopposed after nonmovant filed objections). The undersigned takes into account the entire available record when considering the motion for summary judgment.

Courts are required to liberally construe *pro se* complaints, such as the complaint

filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    <u>Discussion</u>

McClary's amended complaints are made pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal markings omitted). Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

McClary was a pretrial detainee housed at WRJ when the events giving rise to the complaint occurred. Under the Fourteenth Amendment, a pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of punishment. *Riddick v. Willett*, No. 3:15CV361, 2016 WL 3282213, at \*4 (E.D. Va. June 10, 2016)

(citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). In order to determine whether a condition imposed upon a pretrial detainee constitutes punishment, the court must decide whether the condition "was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Riddick*, No. 3:15CV361, 2016 WL 3282213, at *4 (citing *Bell v. Wolfish*, 441 U.S. 520, 538-40 (1979)). "The relevant precedent teaches that 'punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and *substantial* risks of harm.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)). Furthermore, the challenged condition only constitutes punishment where it causes injury. *Id.* "There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Id.* (quoting *Bell*, 441 U.S. at 539 n.21). The due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). Practically, courts do not distinguish between the Eighth and Fourteenth Amendments when evaluating a pretrial detainee's "failure to protect" claim; the "deliberate indifference" standard applicable to claims under the Eighth Amendment applies to both. *See Ervin v. Mangum*, 127 F.3d 1099 (4th Cir. 1997) (collecting cases).

To show a violation of constitutional rights, a plaintiff must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison officials had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). To satisfy the objective component, the plaintiff must show that the challenged condition caused or constituted an extreme

deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [the plaintiff] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler v. Waters,* 989 F.2d 1375, 1379–80 (4th Cir. 1993)).

To fulfill the subjective component, the plaintiff must demonstrate that each individual named in the complaint acted with "deliberate indifference" to the plaintiff's health or safety. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. "[D]eliberate indifference entails more than ordinary lack of due care for the prisoner's interests or safety, and more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 835); *also Ruefly v. Landon,* 825 F.2d 792, 793 (4th Cir. 1987) ("Mere negligent conduct on the part of prison officials who fail to protect a prisoner from a risk of harm posed by fellow inmates does not constitute a violation of the eighth amendment's

prohibition against cruel and unusual punishment."). Put simply, the individuals named in the complaint would have a sufficiently culpable state of mind if they were each aware of an excessive risk of harm to the plaintiff's health or safety but disregarded it. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)) ("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."). Therefore, deliberate indifference "sets a particularly high bar to recovery." *Iko*, 535 F.3d at 241. While it is not enough to show that a prison official *should* have known of the risk of harm, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 842. A prison official's subjective knowledge "can be proven through circumstantial evidence, for example, that the 'substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" *Wynn v. Perry*, No. 3:14-cv-625-FDW, 2018 WL 1077321, at *23 (W.D.N.C. Feb. 27, 2018) (quoting *Farmer*, 511 U.S. at 842). Evidence of "constructive notice" of a substantial risk generally is not sufficient to demonstrate deliberate indifference, however. *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 840-42).

To repeat, McClary claims that jail officials failed to protect him from a foreseeable attack by others housed in his assigned pod. Failure to protect inmates against violence at the hands of their fellow prisoners can give rise to liability under § 1983. *See Farmer*, 511 U.S. at 833–34 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."). Defendants do not argue

that McClary's injury was not sufficiently serious, and he testifies that he continues to suffer from pain in his back, as well as mental distress, because of the attack. (ECF No. 135 at 33). Thus, the undersigned **FINDS** that the objective component of the Fourteenth Amendment analysis is met by McClary's claims.

However, regarding the subjective component, Defendants posit that they are entitled to summary judgment because McClary has not presented evidence that they were aware of a substantial risk of harm to him, or that they deliberately ignored such a risk. (ECF No. 131 at 3–6). This contention as to each movant is discussed below.

A.   *Defendant Blevins*

In his first amended complaint, McClary alleges that he conveyed his fears about his housing assignment to Defendant Blevins, who assured him that he would be safe in his assigned pod. (ECF No. 22 at 4). McClary contends that, contrary to this assurance, Defendant Blevins knew that the pod housed convicted felons, some of whom were "violent," and knew that there was a history at the WRJ of inmates assaulting prisoners accused of sex crimes. (*Id.*). In his deposition, McClary was questioned about his contacts with Defendant Blevins. McClary testified that he had known Defendant Blevins "for years," had grown up with him in the same neighborhood, and had worked for Blevins's father. (ECF No. 135 at 12–13). McClary stated that he spoke with Defendant Blevins while in the holding area of the WRJ, before being taken to his cell and before receiving any threats from other inmates. McClary agreed that he was expressing only "a general concern" to Defendant Blevins that his charge required him to be "put somewhere safe." (ECF No. 135 at 17, 19-21). According to the record, McClary was charged in West Virginia as a fugitive from justice, but his underlying charge out of Virginia was for solicitation of a minor. Defendants do not dispute McClary's version of his conversation with Defendant

Blevins; instead, they argue that this conversation was insufficient to place Defendant Blevins "on notice of an impending danger." (ECF No. 131 at 3). The undersigned agrees.

While McClary maintains that Defendant Blevins knew that McClary was to be housed with convicted felons who were violent toward those charged with certain crimes, (ECF No. 22 at 4), no evidence supports McClary's contention. Indeed, there is nothing in the record pertaining to Defendant Blevins's knowledge or experience at the WRJ, other than McClary's factually unsupported and conclusory statements. Furthermore, McClary offers no evidence to establish that Defendant Blevins was aware of a substantial risk of harm specifically to McClary. In fact, McClary's testimony suggests just the opposite—Defendant Blevins seemed to believe that McClary *would* be safe in his housing assignment. *See Nichols v. Maryland Corr. Inst.-Jessup*, 186 F. Supp. 2d 575, 582 (D. Md. 2002) (granting summary judgment against failure to protect plaintiff from violent cellmate) ("[T]he evidence proves only that [the defendant] did not perceive that there was an imminent threat to Plaintiff such that his refusal to take immediate action was inappropriate."). McClary also offers no evidence to show that Defendant Blevins had information concerning a pattern of violence in the pod where McClary was to be housed that would have placed Defendant Blevins on notice of the danger to McClary. *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer,* 511 U.S. at 842); *Crawford v. S.C. Dep't of Corr.*, No. 6:18-CV-2407-DCN, 2020 WL 5835073, at *11 (D.S.C. Oct. 1, 2020) (holding that defendants were on notice of danger because of circumstantial evidence of frequent fights).

Although McClary indicates that certain individuals in his pod had a history of violence toward people with charges like his, there is no evidence that Defendant Blevins knew the backgrounds of the inmates with whom McClary was to be housed, or that

Defendant Blevins was aware of any dangerous element in the housing assignment. There is absolutely no evidence in the record that any of the inmates who participated in the attack on McClary had a documented history of violence, or had attacked other inmates with charges similar to those pending against McClary. McClary testified that he has not spoken with Defendant Blevins since the conversation in the holding area and, as such, never informed Defendant Blevins about the threats McClary received in C pod. (ECF No. 135 at 25). In sum, as the record is entirely devoid of evidence indicating that Defendant Blevins knew of a substantial risk of harm to McClary and acted with deliberate indifference by failing to protect him, the undersigned **FINDS** that Defendants' motion for summary judgment should be granted as to Defendant Blevins.

### B.    *Defendant Stokely*

In his deposition, McClary testified that at some point during the day of his assault, he handed Defendant Stokely a note stating that McClary was "being threatened" and needed to be moved to a different unit because he was fearing for his life. (ECF No. 135 at 22, 37). According to McClary, Defendant Stokely was in the unit with two trustees to pass out meals. Defendant Stokely took the note, but indicated that he did not have time to read it. (ECF No. 135 at 18, 21-22). McClary could not recall precisely when he gave Defendant Stokely the note, could not describe Defendant Stokely, and testified that he had no contact with Defendant Stokely before or after giving him the note. (*Id.* at 18-19, 21-23).

Defendants argue that, even accepting these allegations as true and in the light most favorable to McClary, there is no evidence that Defendant Stokely understood the danger McClary faced and simply chose to ignore it. They point out that McClary was not aware of Defendant Stokely's name before filing suit and that he only learned of the

officer's identity from a report about the subsequent incident, characterizing McClary's allegations about Defendant Stokely as "conjecture." (ECF No. 131 at 4). After carefully considering the evidence, the undersigned agrees that the record simply does not contain enough information upon which a rational trier of fact could find in favor of McClary and against Defendant Stokely.

To begin, McClary does not demonstrate that he gave the note to Defendant Stokely. McClary testified that he handed the note to a correctional officer who must have been Defendant Stokely, because he was the only correctional officer assigned to McClary's pod at the pertinent time. However, McClary cannot recall when the note was written and is unfamiliar with Defendant Stokely. He could not describe Defendant Stokely, and he had no further contact with the correctional officer to whom he gave the note. He bases his conclusion that Defendant Stokely was the officer who accepted the note solely on a record that he received in discovery. That record was not provided to the Court, however, and there is no other proof that Defendant Stokely received the note. Certainly, the food delivery that day may have been accomplished by someone other than the officer assigned to McClary's pod. It is equally possible that Defendant Stokely was on a break at the time of the relevant food delivery, and his assignment was being covered by someone else. The incident report submitted by Defendants demonstrate that at least three correctional officers responded to the attack on McClary, indicating that more than one correctional officer was available to assist in McClary's pod.

In addition, McClary offers no evidence that Defendant Stokely read the note. To the contrary, the evidence provided by McClary is that the correctional officer who took the note told McClary that he did not have time to read it. If Defendant Stokely did not read the note prior to McClary's assault, then he could not have known that McClary felt

threatened. To demonstrate deliberate indifference, McClary must show that Defendant Stokely was aware of facts from which the inference could be drawn that a substantial risk of serious harm to McClary existed, and that Defendant Stokely drew the inference. *Farmer*, 511 U.S. at 837. McClary does not claim that Defendant Stokely personally witnessed inmates threatening or abusing McClary, and he describes no other event that would have made the danger to McClary obvious to Defendant Stokely. In the absence of evidence that Defendant Stokely knew of a substantial risk of harm to McClary and then deliberately ignored it, the undersigned **FINDS** that Defendants' motion for summary judgment should be granted as to Defendant Stokely.

### C.   *Defendant Franklin*

In his second amended complaint, McClary contends that he told Defendant Franklin about the threats against him and that she knew another inmate had been harassing him all day and admitted he should not have been placed in C pod. (ECF No. 36 at 2). In his deposition, McClary testified that he spoke to Defendant Franklin after the assault occurred, when she was escorting him to another cell. (ECF No. 135 at 23). McClary did not recall speaking with Defendant Franklin prior to the assault and did not advise her in advance that he was being threatened by the inmates who attacked him. (*Id.* at 24). However, McClary reiterated that Defendant Franklin admitted that she had been watching the unit and saw the inmates "tormenting" McClary throughout the day, but did nothing to stop it. (*Id.*).

Defendants emphasize in their motion for summary judgment that McClary only spoke with Defendant Franklin *after* the altercation. They deduce that she was not on notice of the danger beforehand, which was necessary in order for her to have been deliberately indifferent to the risk of harm to McClary. (ECF No. 131 at 4). They conclude

16

that there is no evidence that Defendant Franklin knew of the hazards McClary faced and deliberately failed to protect him. (*Id.*).

Drawing all reasonable inferences in favor of McClary, the evidence simply does not establish that Defendant Franklin was aware of a risk of physical harm to McClary prior to his assault. Although Defendant Franklin may have watched the monitor and may have seen the inmates harassing McClary, there is no evidence to suggest that Defendant Franklin believed the verbal harassment would escalate to a physical attack. According to McClary, after talking to Franklin about the attack, she stated: "They knew better than to put you in there." (ECF No. 135 at 24). However, this statement does not constitute an admission by Defendant Franklin that *she* knew better than to put McClary in the pod, that she nonetheless assigned McClary to that pod knowing of the risks, or that she heard the inmates make threats of physical violence to McClary. McClary alleges that inmates charged with sex crimes are vulnerable to attacks in jail, but this general knowledge does not support the conclusion (1) that McClary was at a heightened risk of assault by the perpetrators who attacked him; (2) that it was probable he would be assaulted if not removed from the pod; or (3) that Defendant Franklin was even aware that the perpetrators knew the nature of McClary's underlying charge—as stated, West Virginia had arrested McClary as a fugitive from justice, not as the perpetrator of a sex crime, and his paperwork from booking included only the fugitive from justice charge. (ECF No. 130-1 at 1). *See Robinson v. Riley*, No. CV 0:19-826-PJG, 2021 WL 6052616, at *6 (D.S.C. Dec. 21, 2021). "[A]s the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases. So, too, does the official's ability to respond." *Reed v. Robinson*, No. 3:20CV200, 2021 WL 3192166, at *5 (E.D. Va. July 28, 2021) (quoting *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008)).

The concept expressed in *Reed* is more thoroughly explained in *Battle v. S.C. Dep't of Corr.*, No. 9:19-CV-1739-TMC, 2021 WL 4167509, at *9–10 (D.S.C. Sept. 14, 2021). In *Battle,* the plaintiff inmate was stabbed and beaten by five inmate members of the Bloods street gang. Prior to the attack, the plaintiff told the defendant correctional officer that something was not right and "something [was] about to happen." *Id.,* at *2. The correctional officer did nothing to address the concern and simply sent the plaintiff back to his cell. While acknowledging that the defendant correctional officer "had an inkling that trouble was afoot" in the plaintiff's housing unit, the Court found insufficient evidence in the record to establish that the defendant was aware of facts from which she could draw the inference that a substantial risk of serious harm to the plaintiff existed. *Id.,* at *9. The Court explained as follows:

> [S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim. Plaintiffs claiming deliberate indifference must show the official in question possessed enough details about a threat to enable him to conclude that it presents a strong likelihood of injury, *not a mere possibility*. Courts have generally concluded, therefore, that an official's awareness of a plaintiff's non-specific fear of harm is insufficient to support a deliberate indifference claim ... threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.

*Battle,* 2021 WL 4167509, at *10. (internal citations and markings omitted) (citing to *Marbury v. Warden*, 936 F.3d 1227, 1237 (11th Cir. 2019) (*per curiam*) ("[Plaintiff's] statement that another inmate told him another inmate intended to harm him is precisely this type of vague statement that conveys nothing about the nature of the anticipated risk ... [and] would not rise to the level of deliberate indifference to a substantial risk."); *Knox v. Doe*, 487 Fed. App'x 725, 728 (3d Cir. 2012) (inmate's statement to prison officials that "I feel it is now best you place me in protected custody due to the serious nature of threats on my life" insufficient to establish officials' deliberate indifference); *Rodriguez v. Sec'y*

*for the Dep't of Corr.*, 508 F.3d 611, 619 n.15 (11th Cir. 2007) (observing that vague statements that a prisoner has "a problem with another inmate in this compound" are insufficient by themselves to create a genuine issue of fact regarding deliberate indifference to a substantial risk of serious harm); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."); *Irvin v. Owens*, No. 9:10-cv-1336-RMG, 2012 WL 1534787, at * 4 (D.S.C. Apr. 30, 2012) (finding insufficient evidence to create a genuine issue of material fact for deliberate indifference claim where prison officials did not know "of any risk posed to Plaintiff specifically by [the assailant-inmate]"); *Beasley v. Stephens*, No. 10-895-GPM, 2011 WL 2670189, at *3 (S.D. Ill. July 7, 2011) (explaining that "[a] vague, general fear of harm that is not based on a specific threat is not enough to state a cause of action for deliberate indifference or failure to protect")).

McClary fails to establish exactly what Defendant Franklin observed on the monitor, what she meant by "tormenting," and whether her observations led her to believe that McClary was likely to be harmed if she did not intervene. Furthermore, McClary does not demonstrate that Defendant Franklin had any specific knowledge about the inmates involved in the assault, or that the risk to McClary was obvious from the circumstances apparent to Defendant Franklin, or that Defendant Franklin knew of a chronic and pervasive history of violence against inmates in McClary's pod, as well as inmates charged with sex crimes. Harassment of one inmate by another inmate is not uncommon and, alone, does not present a danger so obvious that a correctional officer must have appreciated the risk of harm. Therefore, in the absence of evidence that Defendant Franklin knew of a substantial risk of harm to McClary and consciously disregarded it,

the undersigned **FINDS** that Defendants' motion for summary judgment should be granted as to Defendant Franklin.

## IV.    <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the forgoing findings and **RECOMMENDS** that Defendants' motion for summary judgment, (ECF No. 130), be **GRANTED**; the amended complaints, (ECF No. 22, 36), be **DISMISSED** against Defendants Blevins, Stokely and Franklin, with prejudice**;** the amended complaints be **DISMISSED** against Defendant Cook pursuant to Fed. R. Civ. P. 4(m); and this case be **REMOVED** from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727

F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, and counsel of record.

**FILED:** March 22, 2022

Cheryl A. Eifert
United States Magistrate Judge